UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
MILLENNIUM PARTNERS, L.P, AND
MILLENNIUM FIXED INCOME, LTD.,

                                       12 Civ. 7581 (HB)

                    Plaintiffs,

           -against-                           **OPINION & ORDER**

U.S. BANK NATIONAL ASSOCIATION,
WELLS FARGO BANK, NATIONAL
ASSOCIATION, AND J.P. MORGAN
MORTGAGE ACQUISITION TRUST 2006-
WF1,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**Hon. HAROLD BAER, JR., District Judge:**

      Before the Court is a motion to dismiss brought by Defendants U.S. Bank National Association ("U.S. Bank"), J.P. Morgan Acquisition Trust 2006-WF1 (the "Trust"), and Wells Fargo Bank, National Association ("Wells Fargo") (collectively, "Defendants").  The Complaint filed by Plaintiffs Millennium Partners, L.P. ("Millennium") and Millennium Fixed Income, Ltd. (collectively, "Plaintiffs") makes five distinct claims based on Defendants' amendment of the Pooling and Servicing Agreement ("PSA") governing the Trust: (1) violation of the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa *et seq.*, against all Defendants; (2) breach of the PSA against U.S. Bank and Wells Fargo; (3) breach of fiduciary duty against U.S. Bank; (4) aiding and abetting a breach of fiduciary duty against Wells Fargo; and (5) negligence against U.S. Bank and Wells Fargo.  U.S. Bank and Wells Fargo move to dismiss all but the TIA claim against them, and the Trust moves to dismiss the TIA claim.  For the reasons set forth below, motions by U.S. Bank and Wells Fargo to dismiss all but the TIA claim against them are GRANTED, and the Trust's motion to dismiss the TIA claim is GRANTED.

### Background

      Defendant Trust is a common law trust established under New York law pursuant to the terms of a PSA effective as of August 1, 2006, and it has issued several classes of residential mortgage backed securities. Compl. ¶¶ 22, 30.  Pursuant to the terms of the PSA, Defendant U.S. Bank serves the role of the Trustee, and Defendant Wells Fargo Bank performs the roles of the Securities Administrator, Master Servicer, and Servicer. *Id.* ¶¶ 31, 32.  On April 12, 2010,

Millennium bought 100% of the A-3-B Class of senior certificates and sold it to Millennium Fixed Income, Ltd. on September 9, 2010, who in turn sold and then later repurchased the certificates from Barclays Bank in February 2012. *Id*. ¶ 29. On May 16, 2012, Millennium Fixed Income, Ltd. sold all of its certificates to Bank of America. *Id*.

The PSA established a waterfall structure among its senior certificate holders, such that Plaintiffs, along with the holders of some senior certificates, received priority payments of the Trust's principal in the period between April 2010 and May 2011. *Id*. ¶ 3.  Thereafter and beginning with the June 27, 2011 distribution date,  Plaintiffs allege that Wells Fargo unilaterally changed the payment terms of the PSA and paid Millennium principal and interest at the pro rata rate among all the senior certificate holders, causing Millennium to receive approximately $1,831,000 less than the amount it was entitled to under the waterfall structure. *Id*. ¶¶ 3, 7.  On July 13, 2011, Millennium wrote to Wells Fargo about the payment shortfall, and on October 7, 2011, Wells Fargo responded that the language in the prospectus supplement contained a clause that halted the priority payment structure when certain principal payments and an "overcollateralization amount" were reduced to zero due to realized losses on the underlying mortgage loans. *Id*. ¶ 8.  In the same letter, Wells Fargo stated that those conditions had occurred after the May 25, 2011 distribution date, and the business unit, while preparing the June 27, 2011 distribution, noted the inconsistency between the PSA and the prospectus supplement and recommended that future distributions be allocated pro rata. *Id*. ¶ 9. Wells Fargo also advised that the PSA was in the process of being amended to conform to the language in the prospectus supplement as permitted in the amendment provision in the PSA. *Id*. ¶ 10.  On January 1, 2012, U.S. Bank and Wells Fargo signed Amendment No. 1 to the PSA with an effective date of August 1, 2006. *Id*. ¶ 11.

## Discussion

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court, however, need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" as true. *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

at 556). At this stage of the litigation, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference," such as the PSA at issue here. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## A. Breach of the PSA

Under New York law, a plaintiff stating a breach of contract claim must allege: (1) the existence of an agreement; (2) adequate performance of the contract by plaintiff; (3) breach of the agreement by the defendant; and (4) damages. *Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x 48, 49 (2d Cir. 2008). "Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 56 (2d Cir. 2012). To determine whether the language is unambiguous, a court looks "within the four corners of the document" and examines whether there is "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quoting *Kass v. Kass*, 696 N.E.2d 174, 180 (1998); *Breed v. Insurance Company of North America*, 385 N.E.2d 1280, 1282 (1978)).

Here, Plaintiffs allege that U.S. Bank and Wells Fargo breached the PSA by failing to "administer the WF1 Trust in accordance with its terms" and by "working jointly to retroactively amend the distribution provisions of the PSA . . . [and] failing to obtain an opinion of counsel prior to amending the PSA." Compl. ¶¶ 72, 74. However, Section 12.03(a) of the PSA clearly provides: "This agreement may be amended from time to time by the Depositor, the Master Servicer, the Securities Administrator, and the Trustee, *without notice to or the consent of any of the Holders* . . . to cause the provisions herein to conform to or be consistent with or in furtherance of the statements made with respect to the Certificates, the Trust Fund or this Agreement in *any Offering Document* . . . ." Friedman Decl. Ex. C, at 117 (emphasis added). The only contractual limitation to such an amendment is that "[p]rior to entering into any amendment without the consent of Holders pursuant to this paragraph, the Trustee shall be provided with an Opinion of Counsel . . . to the effect that such amendment is permitted under this Section." *Id*. at 118. There are no facts in the Complaint that suggest that the above amendment provision was breached. Rather, the Complaint alleges that Wells Fargo advised

3

Plaintiffs in October 2011 that "there is language in the supplement to the prospectus for this transaction that does not appear in the [PSA]" and that the law firm Bingham McCutchen LLP provided U.S. Bank with an appropriate Opinion of Counsel in January 2012 and Amendment No. 1 was executed in the same month. Compl. ¶¶ 8, 11, 45, 49.  Plaintiffs' reliance on the limiting language of Section 12.03(b) for the proposition that an amendment may not "adversely affect in any material respect the interest of any Holder" is misplaced, since that language clearly does not apply to a conforming amendment specified under Section 12.03(a) at issue here but to *all other* amendments under Section 12.03(b). Friedman Decl. Ex. C, at 118.

       Nor am I persuaded by Plaintiffs' argument that New York courts "consistently favor[]" prospective application of amendments when interpreting a contract that is "silent on amendment retroactivity," Pls.' Opp. 12, a position that is unsupported by any of the cases cited by Plaintiffs. The language of the amendment provision in *Anwar v. Fairfield Greenwich Ltd.*, which Plaintiffs characterize as "similar," is easily distinguishable because there, the provision specifically provided that the amendment "shall be effective as of a date to be established . . . . ", 728 F. Supp. 2d 462, 474 (S.D.N.Y. 2010).  The amendment provision at issue here does not provide any such limitation.  The other cases on which Plaintiffs rely are even more easily distinguishable.  In *Agro v. Joint Plumbing Indus. Bd.*, 623 F.2d 207, 210 (2d Cir. 1980), and *Greco v. Int'l Hodcarriers, Bldg. & Common Laborers' Union Local 17 Pension Fund*, 613 N.Y.S.2d 996 (3rd Dep't 1994), the courts considered whether the retroactive application of the defendants' amendment was "arbitrary or capricious" under ERISA as a part of their fairness analysis.  *Amendola v. A.C. Elec. Co., Inc.* merely held that the employers "cannot retroactively and unilaterally lower the plaintiffs' previously agreed-upon wages" based on a collective bargaining agreement, 608 N.Y.S.2d 279, 279 (2nd Dep't 1994), while *Nantista v. 130 W. 86 Apartments Corp.* was based on "the law in this department . . . that where the proprietary lease does not authorize the board to impose a transfer fee, a shareholder amendment of the lease is necessary to enable the board to enact the fee," 496 N.Y.S.2d 663, 665 (N.Y. Civ. Ct. 1985).  Even more problematic is Plaintiffs' reliance on cases regarding the retroactive application of statutory amendments which have no bearing on this case. *See Sapper v. St. Vincent's Hosp. & Med. Ctr. of New York*, 593 N.Y.S.2d 507, 509 (1st Dep't 1993);  *Landgraf v. USI Film Products*, 511 U.S. 244, 287 (1994).

4

Lastly, I reject Plaintiffs' argument that a contract claim may be established because the TIA "imposes mandatory terms on the PSA and invalidates contract terms." Pls.' Opp. 8-9.  The Court is not aware of, and Plaintiffs do not cite, any case law that supports their proposition that a contract breach, as opposed to a statutory claim, may be established by relying on the TIA.  Moreover, Plaintiffs' claim based on the TIA survives, since Defendants Wells Fargo and U.S. Bank have not moved to dismiss it.

**B. Claims Based on Fiduciary Duty**

To state a claim for a breach of fiduciary duties under New York law, a plaintiff must show: (1) the existence of a fiduciary duty between the parties; (2) the defendant's breach of that duty; and (3) damages. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191 (S.D.N.Y. 2011) (citations omitted).  Although an ordinary trustee generally owes a fiduciary duty to the beneficiaries of the trust, the duties of an indenture trustee like U.S. Bank here is "governed solely by the terms of the indenture, with two exceptions: a trustee must (1) avoid conflicts of interest, and (2) perform all basic, non-discretionary, ministerial tasks with due care," neither of which are considered "fiduciary duties." *Id.* at 191-92.  It is only "post-default [that] an indenture trustee's obligations 'more closely . . . resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture.'" *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 484 (S.D.N.Y. 2011) (Baer, J.) (quoting *Beck v. Manufacturers Hanover Trust Co.*, 632 N.Y.S.2d 520, 527 (1st Dep't 1995)).

Indeed, Section 6.01(a) of the PSA reflects the above distinction between U.S. Bank's pre- and post-default duties: "The Trustee, except during the continuance of an Event of Default . . . undertakes to perform such duties and only such duties as are specifically set forth in this Agreement . . . . If an Event of Default has occurred . . . the Trustee shall exercise such of the rights and powers vested in it by this Agreement and use the same degree of care and skill in their exercise as a prudent Person would . . . in the conduct of such Person's own affairs." Friedman Decl. Ex. C, at 71.  Plaintiffs, nonetheless, allege that U.S. Bank had "actual notice" of default from Wells Fargo by October 7, 2011, at the latest, which triggered its post-default fiduciary obligations, and that U.S. Bank breached its fiduciary duty by failing to oversee Wells Fargo's action and by executing Amendment No. 1. Compl. ¶¶ 78-79.  With respect to Wells Fargo, the Complaint alleges that it aided and abetted U.S. Bank's breach of fiduciary duty by working with U.S. Bank to amend the terms of the PSA. *Id.* ¶ 85.

The Court agrees with Defendants that the two claims based on U.S. Bank's fiduciary duty must be dismissed because Plaintiffs do not adequately plead that an Event of Default giving rise to such duty has occurred nor could they.  Plaintiffs rely on Section 6.14(ii) to allege that the post-default duties were triggered, Compl. ¶¶ 40, 52, but that section defines an Event of Default as: "Any failure on the part of the Master Servicer duly to observe or perform in any material respect any other of the covenants or agreements . . . on the part of the Master Servicer contained in this agreement which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or the Securities Administrator, or to the Master Servicer, the Securities Administrator and the Trustee by the Holders of more than 50% of the Aggregate Voting Interests of the Certificates." Friedman Decl. Ex. C, at 83.  Plaintiffs, however, do not plead that the requisite written notice was given to trigger an Event of Default because they do not allege that they owned 50% of the Aggregate Voting Interests necessary to satisfy the notice requirement of Section 6.14(ii).  Instead, Plaintiffs allege only that "Millennium's July 13, 2011 letter to Wells Fargo notified Wells Fargo of its breach of the PSA by failure to distribute its payments in accordance therewith." Compl. ¶ 50.  Having failed to allege an Event of Default, Plaintiffs' two claims alleging U.S. Bank's post-default fiduciary duty must be dismissed.

**C. Negligence Claim**

To establish a negligence claim under New York law, a plaintiff must demonstrate that: "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997).  However, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *LaSalle Bank Nat. Assoc. v. Citicorp Real Estate Inc.*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *3 (S.D.N.Y. Mar. 21, 2003) (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 389 (1987)).  A tort claim cannot be sustained if it "do[es] no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached." *Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*, No. 03 Civ. 5539, 2004 WL 1444868, at *9 (S.D.N.Y. June 25, 2004) (quoting *Luxonomy Car, Inc. v. Citibank, N.A.*, 408 N.Y.S.2d 951, 954 (2d Dep't 1978)).

Plaintiffs' negligence claim, like their breach of contract claim, is based on the amendment of the PSA. *See* Compl. ¶ 88 ("*By virtue of the foregoing*, U.S. Bank and Wells Fargo breached their duty to exercise reasonable care, competence and diligence in the management and oversight of the WF1 Trust, and to act in a prudent manner consistent with the TIA and industry customs, practice, and standards.") (emphasis added). Since "the nature of [Plaintiffs'] injury and the resulting harm caused by the alleged breach of [Defendants'] tort duty are identical to the injury and harm caused by the alleged breach of contract," the negligence claim must be dismissed as duplicative of the contract claim. *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09 Civ. 9687, 2012 WL 6641633, at *15 (S.D.N.Y. Dec. 13, 2012).

**D. TIA Claim**

The Trust moves to dismiss the TIA claim against itself on the ground that the Complaint makes no allegations against the Trust but for a line in the Complaint which, with no meat on the bones, is all but conclusory. Compl. ¶ 67. This single statement that the Trust "committed several violations" of TIA "in failing to distribute payments to Millennium" does not do it because the factual allegations in the Complaint with respect to insufficient distributions touch only on U.S. Bank and Wells Fargo, not the Trust. To make the cheese more binding, the only provisions of the TIA cited in the Complaint are those enumerating *the trustee's* duties and the right of the holder to bring a suit to receive the principal and interest when due. Compl. ¶ 44 (citing 15 U.S.C. § 77ooo(a), (c), (d), (e) titled "Duties and responsibility of the trustee" and 15 U.S.C. §77 ppp(b) titled "prohibition of impairment"). The TIA claim against the Trust must be dismissed.

**Conclusion**

The Court has considered the parties' other arguments and finds them without merit. The motions by U.S. Bank and Wells Fargo to dismiss are GRANTED, and the Trust's motion to dismiss the TIA claim is GRANTED. The Clerk of Court is instructed to close the relevant motions (ECF No. 13 & 16) and remove them from my docket.

SO ORDERED.

April 17, 2013
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.

7